## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

Gernard D. Chestnut (#130146)

      Plaintiff,

v.                        **CASE NO.:** 4:22-cv-00465-AW-MJF

James Lieutenant Carter,
Amy Rose, RN, Luis Rodriguez, MD
et al.,

      Defendants.
_____/

### DEFENDANT, AMY ROSE, R.N.'S,
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### AND INCORPORATED MEMORANDUM OF LAW

      Defendant, Amy Rose, R.N., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the case law cited herein, hereby files her Motion to Dismiss Plaintiff's Complaint.

      Plaintiff has failed to state a cause of action against Nurse Rose for the alleged "Eighth Amendment rights violations" for conspiracy, failure to treat/intervene, deliberate indifference, medical records falsification, and intentional infliction of emotional distress. (Compl. ¶¶ 1, 35(b).)

## <u>Introduction and Factual Allegations</u>

Plaintiff, *pro se*, Gernard D. Chestnut is a prisoner presently incarcerated at the Union Correctional Institute.[1] *See* FDOC's Offender Search page, http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=130146&TypeSearch=AI (last visited January 9, 2023) (DC#130146).

As a threshold matter, Plaintiff is no stranger to the federal and state courts. In fact, Plaintiff may be the poster child for prisoner litigant frequent fliers and abuse of the litigation process.

Plaintiff has *repeatedly* violated the "three strikes" provision of the Prison Litigation Reform Act ("PLRA") as demonstrated by *numerous* orders from federal courts, including the Northern and Middle Districts. A cursory glance at Plaintiff's extensive PACER history reveals the extent of his abuse of the legal system and misleading tactics. *See* **Exhibit "A."**

After exhausting his options in federal court, Plaintiff turned to the state courts to continue his crusade of abusive litigation tactics.  On December 7, 2022, John C. Cooper, Circuit Judge of the Second Judicial Circuit, found that Plaintiff has "initiated fifteen cases" with the Second Judicial Circuit between 2019-2022,

---

[1] Plaintiff was at the Santa Rosa Correctional Institute at the time of the allegations in the Complaint.

"abused the right of access to the courts," and declined Plaintiff's request to proceed *in forma pauperis* prior to removal to federal court. *See* **Exhibit "B."**

Turning to the allegations in the instant case, Plaintiff claims that on or about June 30, 2021, he was the victim of excessive force at the hands of "Officer Price and Officer Coates" while being transferred within the confines of the Santa Rosa Correctional Institution. (Compl. ¶ 11.) Plaintiff alleges that Officers Price and Coates "pull[ed], ben[t], and twist[ed]" his fingers until they were "broken and fractured." (*Id.*) Plaintiff also claims that other correctional officers, Lt. J. Carter and Sergeant Pugh, participated in, or facilitated the cover-up of, this alleged attack by allegedly blocking a "camcorder." (*Id.* at ¶ 13.). Plaintiff claims that "these officers" then denied access to medical treatment, despite Plaintiff's claims that Nurse A. Rose subsequently assessed the patient and documented that Plaintiff "'had no visible injuries, and voiced no complaints." (*Id.* at ¶¶ 14-15.).

The allegations against Nurse Rose -- who is "being sued" in her "individual capacit[y]" -- are remarkably thin. (*Id.* at ¶ 10.). Plaintiff alleges, without any supporting facts, that after the attack above Nurse Rose "falsified documents" by noting in the patient's medical record that "'Plaintiff refused medical [treatment], had no visible injuries, and voiced no complaints.'" (*Id.* at ¶¶ 15, 19.). Despite claiming that he did not receive treatment, Plaintiff alleges that Nurse Rose and Dr. L. Rodriguez saw the patient on June 30, 2021 at 11:40am, and documented that

Plaintiff "refused medical, had no visible injuries, and made no complaints." (*Id.* at ¶ 19.). (While Plaintiff claims that this medical record was attached as Exhibit 1 to his Complaint, the medical record was not attached.)

In addition to Nurse Rose, Plaintiff alleges that Dr. L. Rodriguez "conspired" with unnamed "officials" to cover-up the attack above by "delaying X-ray treatment for weeks where broken bones could heal up." (*Id.* at ¶ 16.). No facts regarding this alleged conspiracy are set forth in the Complaint.

Three weeks after the alleged attack perpetrated by Officers Price and Coates, Lt. J. Carter, and Sergeant Pugh, on July 21, 2021, Plaintiff claims he had X-rays taken of his hand that revealed a "comminuted fracture at the distal fourth metacarpal without mild lateral displacement and volar angulation." (*Id.* at ¶ 20.). (While Plaintiff claims that this radiology report was attached as Exhibit 2 to his Complaint, it was not attached.)

Without any additional supporting facts, Plaintiff maintains that the actions above "reveal[] [that] All Defendants are Guilty and the Facts as presented by the Plaintiff are true." (*Id.* at ¶ 23.).

In his prayer for relief, Plaintiff claims - again without any supporting facts - that Nurse A. Rose "conspired to facilitate assault and battery by falsifying documents and obstructed medical treatment in deliberate indifference." (*Id.* at ¶ 32.).  In addition to Nurse Rose, Plaintiff also claims that Dr. Rodriguez, Lt. Carter,

Sergeant Pugh, Officer Price, Officer Coates, Mr. Wentz, and John Doe were somehow involved in the conspiracy to commit assault and battery and "falsify" medical records in connection with the same. (*Id.* at ¶¶ 28-35.).

Accordingly, Plaintiff requests that this Court find that Nurse Rose violated Plaintiff's "Eighth Amendment" right to be free from "deliberate indifference to medical needs" by engaging in a "conspiracy" to "falsify records." (*Id.* at ¶ 35(b).). Plaintiff also asks this Court to enter "injunctive orders" entitling him to "reconstructive surgery for Plaintiff's injured knuckles and therapy," release from "Close Management Confinement," and "damages for Plaintiff's physical and emotional injuries and punitive damages against each Defendant." (*Id.* at ¶ 35(c)-(e)). He also seeks "$100,000.00 (one hundred thousand dollars)" in damages. (*Id.* at ¶ 1.)

## MEMORANDUM OF LAW

### I.   <u>Motion to Dismiss Standard</u>

"[T]o survive a motion to dismiss, a complaint must contain sufficient matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). The plausibility requirement requires more than the possibility a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. A complaint that merely pleads facts consistent with liability does not meet the plausibility standard. *Id.* To meet the

plausibility standard, facts must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Federal pleading rules require a complaint to provide sufficient notice to a defendant regarding the causal connection between him and the plaintiff's claim. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

Conclusory factual allegations, unwarranted deductions, claims that are internally inconsistent or can be disproven by facts of which the court can take judicial notice, and legal conclusions are not accepted as true for the purposes of a motion to dismiss. *Ellen S. v. Fla. Bd. of Bar Examiners*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "'[N]aked assertions devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). While *pro se* litigants are entitled to the benefit of having their pleadings liberally construed, a court cannot "act as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by *Iqbal*).

In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a pro se plaintiff, but it need not accept as true legal conclusions. *See Iqbal*, 556 U.S. at 678. Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Twombly*, 550 U.S. at 556.

In resolving a motion to dismiss under Rule 12(b)(6), a court ordinarily considers only the allegations within the four corners of the complaint and documents attached thereto. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1368 (11th Cir. 1997)). However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment … if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F. 3d 799, 802 n.2 (11th Cir. 1999)). The same applies to a document attached to a plaintiff's response to a motion to dismiss. *Sosa v. Hames*, 218 F. App'x 976, 978 n.3 (11th Cir. 2007) (citing *Horsley*, 304 F. 3d at 1134; *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993)).

## II.   Plyaintiff Failed to Allege Any Specific Facts to Support a Conspiracy Involving Nurse Rose

Plaintiff has not alleged any specific facts to support the serious allegation that Nurse Rose was involved in a conspiracy to deny Plaintiff medical care or cover-up an alleged attack by corrections officers. In fact, the facts alleged here indicate that Nurse Rose and Dr. Rodriguez saw and assessed the patient after the alleged attack, and documented that Plaintiff refused medical care, had no visible injuries, and made no complaints. (Compl. ¶¶ 15, 19.).

While Plaintiff made a "conclusory, vague and general statement[]" that Nurse Rose falsified a medical record to cover-up an alleged attack by corrections officers, and boldly concluded that "All Defendants are Guilty and the Facts as presented by the Plaintiff are true," Plaintiff "did not allege facts showing that the defendants reached an understanding to deny him his rights." *Fulwood v. Fed. Bureau of Prisons*, 568 Fed. Appx. 753, 757 (11th Cir. 2014) (citing *Bendiburg v. Dempsey*, 909 F. 2d 463, 468 (11th Cir. 1990)) (affirming district court's dismissal for failure to state a cause of action because prisoner's vague and conclusory allegations did not state a claim for conspiracy to violate his constitutional rights). *See also Kearson v. S. Bell Tel. & Tel. Co.*, 763 F. 2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint."); *Grider v. City of Auburn*, 618 F. 3d 1240, 1261 (11th Cir. 2010).

This is particularly important because the Eleventh Circuit has found that a "plaintiff claiming a conspiracy under § 1983 must make *particularized allegations that a conspiracy exists.*" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 139 (11th Cir. 2011) (emphasis added). No such particularized allegations are made in the Complaint.

Here, Plaintiff's Complaint does not make any specific allegations demonstrating any connection between Defendants' actions or that they acted in concert to violate his constitutional rights. Plaintiff offers no facts suggesting that Nurse Rose, Dr. Rodriguez, or any of the correctional officers reached an agreement to deprive Plaintiff of medical treatment in furtherance of an elaborate cover-up. Because Plaintiff "failed to provide any support for the allegations set forth in his complaint in regards to a conspiracy among any defendants," the conspiracy claim against Nurse Rose should be dismissed. *Fulwood*, 568 Fed. Appx. at 757.

III. **Plaintiff's Deliberate Indifference Claim Against Nurse Rose Fails to State a Cause of Action Because (A) Plaintiff Alleges that He Was Assessed and Received Care on June 30, 2021, and (B) Several Federal Courts Have Found that A Broken Finger Does Not Constitute a Serious Injury to Satisfy the Objective Prong of the Deliberate Indifference Test**

   A.   *Plaintiffs' allegations that he was seen, assessed, had no visible injuries, voiced no complaints, refused treatment, and later underwent X-rays are fatal to his deliberate indifference claim*

Plaintiff's Complaint is a facially deficient Section 1983 claim for "deliberate indifference" that improperly masquerades as an ill-plead medical malpractice

claim. Plaintiff has failed to allege any facts sufficient to bring a deliberate indifference claim. Rather, the facts alleged here indicate that Nurse Rose and Dr. Rodriguez did not turn a blind eye to Plaintiff's needs. The allegations in the Complaint indicate that Nurse Rose and Dr. Rodriguez saw and assessed the patient after the alleged attack, documented that Plaintiff refused medical care, had no visible injuries, made no complaints, and that he later underwent x-rays of his hand. (Compl. *in passim*.).

For Plaintiff to state a cognizable deliberate indifference claim, Plaintiff must demonstrate that prison officials acted with deliberate indifference to serious medical needs under 42 U.S.C. § 1983. "Deliberate indifference is a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle v. Gamble*, 429 U.S. 79, 105-06 (1976).

To prevail, Plaintiff must satisfy both an objective and a subjective inquiry. *Bingham v. Thomas*, 654 F. 3d 1171, 1175 (11th Cir. 2011) (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). First, a plaintiff must show an objectively "serious medical need," *Estelle*, 429 U.S. at 104, that, if left unattended, "pos[es] a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Plaintiff must also

demonstrate that the prison official's response "to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F. 3d at 1258 (citing *Estelle*, 429 U.S. at 105-106).[2]

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*

Likewise, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of cruel and unusual punishment. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))). Where, as here, "a governmental actor[] should have employed additional diagnostic

---

[2] "A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need 'cannot be found liable under the Cruel and Unusual Punishments Clause.'" *Taylor*, 221 F.3d at 1258 n.5.

techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F. 3d 1537, 1545 (11th Cir. 1995) (citing *Estelle*, 429 U.S. at 107). Or, as the Eleventh Circuit recently observed, "[w]ith respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be 'perfect, the best obtainable, or even very good.'" *Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F. 3d 1263, 1271 (11th Cir. 2020) (quoting *Harris*, 941 F.2d at 1510 (quotation omitted)).

Plaintiff "must also show a prison official's subjective intent to punish." *Bingham*, 654 F.3d at 1176 (citing *Taylor*, 221 F. 3d at 1258). "To satisfy this requirement, a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'" *Bingham*, 654 F. 3d at 1176 (citing *Brown*, 387 F.3d at 1351). Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. *Id.*

Here, Plaintiff has failed to allege any facts that satisfy an Eighth Amendment deliberate indifference constitutional violation by Nurse Rose. With formulaic buzzwords eliminated from the equation, it appears that Plaintiff is upset with the fact that Nurse Rose and Dr. Rodriguez documented that Plaintiff refused medical

treatment after the alleged attack, had no visible injuries, and voiced no complaints. This was not a situation where Nurse Rose and Dr. Rodriguez turned a blind eye or otherwise refused to see the patient. Moreover, the fact that Plaintiff concedes that he was seen and assessed by two providers after the alleged attack, and later underwent x-rays of his injured hand on July 21, 2021 is fatal to his deliberate indifference claim.

> B.    *A broken finger does not constitute a serious enough injury to satisfy the objective prong of the deliberate indifference test*

In addition to the arguments set forth above, *several* federal courts have held "that broken or bleeding fingers do not constitute serious injuries" for purposes of a deliberate indifference claim. *Kelly v. Jones*, 5:15-CV-0337-CAR-MSH, 2017 WL 2676422, at *4 (M.D. Ga. June 21, 2017) (citing *Duran v. Donaldson*, 663 Fed. Appx. 684, 689 (10th Cir. 2016)) (holding that "decreased grip strength and discomfort in [a] finger do not rise to the level of an objectively, sufficiently serious injury" where plaintiff broke a finger).

*See also Curry v. Kim*, 22-CV-4127 (LTS), 2022 WL 2702744, at *3 (S.D.N.Y. July 11, 2022); *Osacio v. Greene*, 08-CV-0018, 2009 WL 3698382, at *5 (N.D.N.Y. Nov. 2, 2009) (finding that a broken metacarpal does not constitute a serious medical condition); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("Case law holds that the objective prong of the deliberate indifference test is not satisfied . . . whe[n] a finger is broken.");

*Henderson v. Doe,* 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (holding "conditions that have failed to meet [the sufficiently serious] standard include . . . a broken finger"); *Rivera v. S.B. Johnson,* 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection.").

Similarly, here, the alleged injury to Plaintiff's finger -- a fracture at the distal fourth metacarpal -- fails to rise to the level of a serious injury necessary to sustain a deliberate indifference claim.   (Compl. ¶ 20.).   Therefore, Plaintiff's claim of deliberate indifference to a serious medical need fails as a matter of law because Plaintiff fails to allege a serious medical condition.

## IV.   **Plaintiff Failed to Properly and Timely Exhaust His Available Administrative Remedies With Respect to the Allegations Against Nurse Rose**

Plaintiff failed to exhaust his administrative remedies regarding the allegations against Nurse Rose, and therefore his Complaint against Nurse Rose should be dismissed. While Plaintiff filed countless informal and formal grievances against several individuals involving the alleged attack referenced in the Complaint (and other issues unrelated to the attack) none of these July-August 2021 grievances reference Nurse Rose or her allegedly tortious acts on June 30, 2021. *See* **Exhibit "C,"** a true and correct copy of Plaintiff's Informal and Formal Grievances from

-14-

June 30, 2021 to August 12, 2021. In fact, the claims in Plaintiff's Informal Grievances directly contradict many of the allegations in his Complaint.

### A.     The Law on Administrative Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   This requirement is mandatory. *Alexander v. Hawk*, 159 F. 3d 1321, 1323 (11th Cir. 1998); *Harper v. Jenkin*, 179 F. 3d 1311 (11th Cir. 1999). Section § 1997e(a) requires the plaintiff to exhaust any available administrative remedy *before* he files suit. *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (unreported op.); *Cox v. Mayer*, 332 F. 3d 422, 425 (6th Cir. 2006).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the United States Supreme Court held that 42 U.S.C. §1997e(a) applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth v. Churner*, 532 U.S. 731, 734, (2001); *Alexander*, 159 F. 3d at 1325. The requirement is not subject to either waiver by a court, or futility or inadequacy exceptions. *Alexander*, 159 F. 3d at 1325.

"The [Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e,] exhaustion requirement requires full and proper exhaustion." *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion is a mandatory pre-condition to filing a suit. *Woodford*, 548 U.S. at 85. Completion of the exhaustion requirement means properly completing each step of the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Johnson v. Meadows*, 418 F. 3d 1152, 1158 (11th Cir. 2005); *Zolicoffer v. Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999) ("The exhaustion requirement mandates a good faith, bona fide effort to comply with [the grievance] procedures for obtaining an administrative remedy."), *affirmed*, 252 F. 3d 440 (11th Cir. 2001).

The Eleventh Circuit Court of Appeal has noted that the policy reasons underlying the requirement of exhaustion are:

> 1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander*, 159 F.3d at 1327 (quoting *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F. 2d 705, 712 (11th Cir. 1992)). The Eleventh Circuit has also

stated that the purpose of exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F. 3d 1278, 1287 (11th Cir. 2004) (citations omitted). The purpose of filing administrative grievances, as defined by the FDC inmate grievance procedure is

> to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

Rule 33-103.001(1), Fla. Admin. Code. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's procedural rules." *Woodford*, 548 U.S. at 95. *"Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement." Shields v. Paeplow*, No. 09-21818-Civ-SEITZ, 2010 WL 5419002, at *7 (S.D. Fla. Nov. 16, 2010) (report and recommendation ("R&R") citing *Woodford*, 548 U.S. at 87-94), 2010 WL 5419081 (Dec. 23, 2010) (unpublished order adopting R&R).

*All* claims must be exhausted prior to filing a lawsuit. *See Jones*, 549 U.S. at 219-24. The district court is tasked with separating the exhausted claims from the

unexhausted claims, dismissing the unexhausted claims, and proceeding forward on only the exhausted claims. *Id.*

The FDC has established a grievance procedure in the Florida Administrative Code, §§ 33-103.001 to 33-103.019. *Chandler*, 379 F. 3d at 1288. Generally, to properly exhaust administrative remedies prisoners must complete a three-step process starting with an informal grievance on a DC6-236 form, followed by a formal grievance on a DC1-303 form, and completed by the submission of a grievance appeal on DC1-303 form. *See* Rules 33-103.005-.007, Fla. Admin. Code ("F.A.C."). The informal and formal grievances are institutional grievances, meaning they are filed at the prison the prisoner is housed at for a response by a prison staff member. *Id.*; *Chandler*, 379 F. 3d at 1287-88. Exhaustion requires that all steps within the grievance process be completed before filing suit, including waiting for a response to the grievance appeal before initiating the judicial action. *See, e.g.*, *Smith v. Terry*, 491 F. App'x at 82-83 (finding that to complete the exhaustion requirement, the inmate was required to wait for the grievance appeal response or for the requisite appeal response time to expire before filing his § 1983 action).

In *Turner v. Burnside*, 541 F. 3d 1077 (11th Cir. 2008), the Eleventh Circuit held that "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Id.* at 1082 (citing *Bryant v. Rich*, 530 F. 3d 1368, 1374 (11th Cir. 2008) ("instances exist-such as those

involving jurisdictional issues when judges may resolve factual questions. One such instance is when a judge must decide a motion to dismiss for failure to exhaust nonjudicial remedies.")). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant*, 530 F. 3d at 1374-1375 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F. 2d 365, 368-69 (9th Cir. 1988)).

According to *Bryant*:

> Where exhaustion-like jurisdiction, venue, and service of process-is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Bryant*, 530 F. 3d at 1376.

The Court further held that deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed... If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Id.* (internal citations omitted).

### B.     The Law Applied to the Facts

On June 30, 2021, Plaintiff drafted an informal grievance using the Informal

Grievance form required by Rule 33-103.005 of the Florida Administrative Code.

*See* **Exhibit "C."** In said grievance, Plaintiff complained that "Officer Price, Sgt

Pugh, and other officers" used excessive force against him, broke his right hand, and

that Plaintiff requested medical treatment and an x-ray. *Id.* Nurse Rose is not

mentioned or referenced in this informal grievance, nor is there any reference to the

fact that Nurse Rose or Dr. Rodriguez allegedly "falsified documents" by claiming

that Plaintiff refused medical treatment, had no visible injuries, and voiced no

complaints on June 30, 2021.

In fact, in another informal grievance dated July 7, 2021, Plaintiff complained

that various correctional officers "refused to pull me from [my] cell to have my hand

injuries x-ray'd." **Exhibit "C."** This informal grievance does not reference Nurse

Rose or any of the allegations regarding Nurse Rose in the Complaint. This informal

grievance also indicates that Plaintiff had orders for an x-ray as early as July 7th, a

claim clearly at odds with Plaintiff's allegation that Dr. Rodriguez and Nurse Rose

somehow conspired to delay "x-ray treatment for weeks where broken bones could

heal up." (Compl. ¶ 16.)

Similarly, in an informal grievance dated July 12, 2021, Plaintiff claims he

was "seen for sick call" on July 5, 2021, yet another claim clearly at odds with

Plaintiff's allegation that Dr. Rodriguez and Nurse Rose somehow conspired to delay providing treatment to Plaintiff. **Exhibit "C."**

On July 12, 2021, Plaintiff submitted an informal grievance that cryptically references the allegation that Officers Prices and Coates "conspired with fellow officers and medical staff to deny me of x-rays to cover this criminal assault." **Exhibit "C."** This informal grievance did not reference or mention Nurse Rose.

After the July 12, 2021 informal grievance, Plaintiff submitted a *number* of formal grievances relating to a range of issues such as dental care, laundry, and the alleged assault by the correctional officers. **Exhibit "C."** However, none of these formal grievances reference Nurse Rose or the alleged conspiracy to deny Plaintiff his X-rays by way of medical record falsification. **Exhibit "C."** Put simply, while Plaintiff arguably referenced the Nurse Rose conspiracy in an informal grievance, he never followed that allegation up with a formal grievance or appeal as required by the Florida Administrative Code.

Accordingly, Plaintiff has failed to exhaust his administrative remedies against Nurse Rose. Plaintiff cannot be allowed to proceed on unexhausted claims.

## V.   Nurse Rose is Entitled to Qualified Immunity

Plaintiff sued Nurse Rose in her individual capacity. An official sued in her individual capacity "is entitled to qualified immunity for [her] discretionary actions unless [s]he violated 'clearly established statutory or constitutional rights of which

a reasonable person would have known.'" *Black v. Wigington*, 811 F. 3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F. 3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F. 3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. *Id.* In other words, "[q]ualified immunity shields an officer from suit when [she] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [she] confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate she was acting within her discretionary authority at the relevant times. *Id.*

Nurse Rose has carried her burden. Plaintiff sues Nurse Rose for acts or omissions that occurred while she was serving as a correctional nurse. Plaintiff has alleged that Nurse Rose saw the patient on June 30, 2021, that Plaintiff refused medical treatment that day, that Nurse Rose did not observe any discernable injuries,

and that Plaintiff did not voice any complaints that day. These are all actions that one would expect a correctional nurse to make as part of her job as a nurse.

As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate Nurse Rose violated a constitutional right that was "clearly established" at the time of the alleged violation. *Id.* As discussed above, Plaintiff has failed to state plausible conspiracy and deliberate indifference claims against Nurse Rose. Therefore, Nurse Rose is entitled to qualified immunity as to Plaintiff's Eighth Amendment claims against her.

## CONCLUSION

For all the reasons set forth above, the allegations in the Complaint against Nurse Rose should be dismissed for failure to state a cause of action.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I certify that this Memorandum complies with the word count limitation set forth in the Local Rules.  This Motion and Memorandum contains 5,472 words.

**WHEREFORE**, Defendant, Amy Rose, R.N., respectfully requests the Court enter an order dismissing Plaintiff's Complaint, with prejudice, for failure to state a cause of action.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 11, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify

that I provided the foregoing document by first-class U.S. mail to the following non-CM/ECF participant:   Gernard D. Chestnut (#130146), Union Correctional Institution, P.O. Box 1000, Raiford, FL 32083.

/s/ Ethen R. Shapiro

Ethen R. Shapiro (FBN 669881)
Hill, Ward & Henderson, P.A.
101 East Kennedy Blvd., Suite 3700
Tampa, Florida 33602
(813)221-3900
(813)221-2900 - facsimile
ethen.shapiro@hwhlaw.com
*Attorney for Defendant Amy Rose, RN*

17743023v1